## McDONALD v. THOMPSON ET AL.

No. 55.  Argued November 8, 9, 1938.—Decided December 5, 1938.

*Messrs. Lloyd E. Price* and *T. S. Christopher* for petitioner.

*Messrs. William McCraw,* Attorney General of Texas, and *Albert G. Walker,* Assistant Attorney General, for respondents.

By leave of Court, briefs of *amici curiae* were filed by *Messrs. Daniel W. Knowlton* and *E. M. Reidy* on behalf of the Interstate Commerce Commission, in support of petitioner; and by *Messrs. John E. Benton* and *Clyde S. Bailey* on behalf of the National Association of Railroad & Utilities Commissioners, in support of respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner brought this suit in the federal court for the northern district of Texas against the members of the Texas Railroad Commission and its enforcement officers to enjoin them from enforcing against him the state Motor Truck Law.[1]  Respondents answered; there was a trial; the court made findings of fact, stated its conclusions of law, and entered a decree permanently enjoining respondents from interfering with petitioner's business in interstate transportation.  The circuit court of appeals reversed and remanded with directions to dismiss the bill. 95 F. 2d 937.  This Court granted a writ of certiorari.

Section 3 of the state law requires every carrier of property by motor for hire over public highways of the

---

[1] Acts Reg. Sess., 42d Leg., 1931, c. 277; Vernon's Tex. Ann. Civ. St., Art. 911b.

State to obtain from the Railroad Commission a certificate of convenience and necessity. Section 4 makes it the duty of the commission to regulate the transportation, to prescribe rules for safety of carriers' operations, and to supervise all matters affecting relationships between the carriers and the public.

The federal Motor Carrier Act, 1935,[2] § 206 (a), declares that no common carrier by motor vehicle subject to its provisions shall engage in interstate commerce unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing the operation. A proviso in that section declares that, if any such carrier "was in bona fide operation as a common carrier by motor vehicle on June 1, 1935," over routes for which application is made and has so operated since that time, the commission shall issue the certificate without requiring further proof that public convenience and necessity will be served by the carrier's operation. Pending determination of the application, the applicant is authorized to continue operations.

Since some time before the passage of the Act, petitioner has been continuously using Texas highways in interstate transportation of property by motor vehicle for hire. Claiming to have been in bona fide operation as contemplated by the proviso, he made timely application to the Interstate Commerce Commission for a certificate authorizing him to continue to operate over the highways he has been using. The application is still pending, and petitioner insists that, notwithstanding state law, he is entitled to continue operations under the proviso. The question first to be decided is whether his claim of bona fide operation is well founded.

In May of 1934 he applied to the state commission for a certificate authorizing operation as a common carrier in

[2] Act of August 9, 1935, 49 Stat. 543, 551; 49 U. S. C., § 306 (a).

interstate commerce. July 14, 1934, the commission denied the application on the ground that the proposed operations would subject the highways named in it to excessive burden and endanger and interfere with ordinary use by the public. Petitioner appealed to the district court of Travis county and obtained a decree enjoining the commission from interfering with his operations. The court of civil appeals, January 8, 1936, reversed and dissolved the injunction. 90 S. W. 2d 581. Thus it appears that petitioner's operations have been without authority of the Texas commission and, unless within the proviso of the federal Act, without authority of federal law.

Exact definition of "bona fide operation" is not necessary. As the Act is remedial and to be construed liberally, the proviso defining exemptions is to be read in harmony with the purpose of the measure and held to extend only to carriers plainly within its terms. *Piedmont & Northern Ry. Co.* v. *Interstate Commerce Comm'n*, 286 U. S. 299, 311. To limit the meaning to mere physical operation would be to eliminate "bona fide." That would be contrary to the rule that all words of a statute are to be taken into account and given effect if that can be done consistently with the plainly disclosed legislative intent. *Ginsberg & Sons* v. *Popkin*, 285 U. S. 204, 208. *Ex Parte Public National Bank,* 278 U. S. 101, 104. There is nothing to justify rejection of these qualifying words. The expression, "in bona fide operation," suggests absence of evasion, excludes the idea that mere ability to serve as a common carrier is enough, includes actual rather than potential or simulated service, and in context implies recognition of the power of the State to withhold or condition the use of its highways in the business of transportation for hire. Plainly the proviso does not extend to one operating as a common carrier on public highways of a State in defiance of its laws.

As petitioner is not protected in his operation as a common carrier by the proviso, we need not consider to what extent, if at all, the federal Motor Carrier Act superseded the state Motor Truck Law, or any other question presented by petitioner.

*Affirmed.*