**A. E. McDONALD MOTOR FREIGHT LINES, Inc., v. UNITED STATES et al.**

No. 182.

District Court, N. D. Texas, Fort Worth Division.

April 17, 1940.

J. J. Shaw, of Houston, Tex., and Amos M. Felts, of Austin, Tex., for plaintiff.

Scott & Wilson, of Waco, Tex., and Baker, Botts, Andrews & Wharton, of Houston, Tex., for defendant.

Before HUTCHESON, Circuit Judge, and KENNERLY and BRYANT, District Judges.

HUTCHESON, Circuit Judge.

Plaintiff, a motor carrier operator, brought this suit to set aside an order of the Interstate Commerce Commission, finally denying him a "grandfather" certificate [1] on the ground that operating without permit or certificate from the Railroad Commission of Texas, and in a continual state of conflict with it, he was not, within the Federal Motor Carrier Act, 49 U.S.C.A. § 301 et seq., in bona fide operation.

Complainant, pointing out that his operations have always been in interstate, never in intrastate, commerce, insists (1) that the Railroad Commission of Texas has and had no authority either to permit or to interfere with such operations, and (2) that if it has, complainant on June 1, 1935, and throughout the years of his operation, was of the bona fide belief that it did not have such authority, and was maintaining this belief in the courts as he was by law allowed to do. He insists that this being so, it may not be claimed that merely because he finally lost in the courts, his suit against the State Commission, his operations in the interim were not completely bona fide.

In addition to his attack upon the order dismissing his application, as erroneously denying him a "grandfather" certificate, McDonald complains of it as oppressive and unwarranted, in view of his additional application before the commission under Section 307 (a),[2] and his request that his two applications be consolidated and determined together. His contention here being that the commission should have withheld action on his "grandfather" application and determined both applications together, thus continuing his right to operate under the "grandfather" application until all the rights asserted by him had been finally and fully decided.

On his first position, McDonald urges upon us that the words, bona fide, as used in the "grandfather" or first proviso clause of 306 (a), are used there in their ordinary

[1] "Sec. 206 (a) Except as otherwise provided in this section and in section 210 [310] (a), no common carrier by motor vehicle subject to the provisions of this part [chapter] shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: Provided, however, That, subject to section 310, if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time * * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings * * *." 49 U.S.C.A. § 306(a).

[2] "Sec. 207 (a) Subject to section 210 [310], a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part [chapter] and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied: * * *." 49 U.S.C.A. § 307(a).

sense of "in good faith and with honest intention". He insists that since it may not be denied that he was pursuing in the courts with the bona fide belief that he was entitled to it, the remedy of an injunction against commission interference, his operations were necessarily bona fide, and in good faith, though he did not prevail in the actions he brought.

But the full force of his argument is directed, with a vigor and earnestness and a sincerity which does not permit of question, to the point that the state commission in asserting the right to interfere with interstate carriage over the highways, though solely within the state, is not only without express power, but is an embezzler of power, and that the courts in construing the Texas Motor Carrier Act, Vernon's Ann.Civ.St. art. 911b et seq., as authorizing the Texas Commission to exercise authority *over* interstate carriers, have misconstrued the statute and have written into it provisions which are not there. Minutely analyzing the acts and pointing out that it speaks throughout of a certificate of convenience and necessity; that it makes no distinction between state and interstate carriage; and that it nowhere provides for an interstate permit or certificate on considerations of the protection of the highways or of public safety; he insists that he is entitled to an original and independent construction here of the Texas and Federal Motor Carrier Statutes in their relation to each other and of his right to a "grandfather" certificate; and that the Interstate Commerce Commission by pitching its decision entirely upon that of the Supreme Court in McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164, has in effect denied him a hearing and determination of his rights as a bona fide operator under the Federal Motor Carrier Act.

■ We are entirely convinced of complainant's sincerity and bona fide belief in the rectitude of his positions and actions and if we could agree with him, in his construction of the Texas act and the power of the Texas Commission under it, or that the test of bona fide operations under the Federal Act may be thus subjectively satisfied, we should agree that he was entitled to a "grandfather" certificate. But, we are quite clear that the statute does give the state commission supervision over interstate use of state highways to the extent of protecting the highways themselves and the safety of the public thereon,[3] and we are equally convinced that no amount of bona fide belief, that one has the right to operate over state highways, will satisfy the Federal Act's requirement of bona fide operation, when in fact the operation is not in accordance with, but in violation of, state law.

■ And, we think it may not be doubted that the issuance of temporary injunctions against the commission or even a permanent injunction, if appealed from and reversed, did not render legal what was illegal, make valid a use which was invalid. They merely restrained the commission from acting against complainant until the rights in controversy could be settled and the final judgment in the case settled those rights, not as of the date of its entry, but as of the date of the issuance of the commission order which was under attack.

■ Complainant's rights therefore were neither bettered nor worsened by the injunctions that he got. Merely stop orders, they disappeared when the adjudication went against him and left complainant as of the date of the commission's order, where the commission's order had left him, an operator without right, under state laws, on the highways and therefore, one who,

---

[3] Bradley v. Public Utilities Commiss'on, 289 U.S. 92, 53 S.Ct. 577, 77 L.Ed. 1053, 85 A.L.R. 1131; Stephenson v. Binford, 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288, 87 A.L.R. 721; South Carolina State Highway Dept. v. Barnwell Brothers et al., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734; McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164; Wald Storage & Transfer Co. v. Smith, D.C., 4 F.Supp. 61; Texport Carrier Corporation v. Smith, D.C., 8 F.Supp. 28; Railroad Commission et al., v. McDonald, Tex.Civ.App., 90 S.W.2d 581; Winton v. Thompson et al., Tex. Civ.App., 123 S.W.2d 951; Railroad Commission of Texas v. Southwestern Greyhound Lines, Inc., Tex.Civ.App., 92 S.W.2d 296; Ex parte Harry Truelock, Tex.Cr.App., 140 S.W.2d 167, not yet reported [in State reports]; Jones et ux. v. Vernon Parish School Board, 184 La. 1, 165 So. 310; Railroad Comm. of Texas et al. v. A. E. McDonald Motor Freight Lines, Inc., et al., Tex.Civ.App., 127 S.W.2d 932; Railroad Commission et al., v. Loving, et al., Tex.Civ.App., 128 S.W.2d 845; Sage v. Baldwin, D.C., 55 F.2d 968.

within the meaning and purpose of the Federal Motor Carrier Act, could not be or have been a bona fide operator thereon. That this is so, a consideration of the whole act makes plain. Taking up at the point where the presence of state and the absence of federal laws for granting certificates had left the matter, Congress, by the Federal Motor Carrier Act, manifested two paramount purposes, (1) to avoid disruption of settled lawful motor carrier service by permitting such operators to continue to operate without making proof under Section 307 (a) that public convenience and necessity will be served by operation, and (2) to require all other carriers to apply for and obtain from the commission under Section 307 (a), certificates of public convenience and necessity. In the first class of cases come those (a) within the first proviso of Section 306 (a), the "grandfather" clause, who could show actual bona fide operation as a common carrier on June 1, 1935, and (b) those within the second proviso, carriers "lawfully engaged in operations solely within a state * * * holding certificates from a state board having authority to grant or approve certificates for such operation."

■ It would be a complete negation both of the purpose and purport of the statute to find and hold that plaintiff was entitled to a certificate under the "grandfather" clause, when it has been settled by the decisions both state and federal, that the state commission has police jurisdiction over the highways, and both state and federal courts in cases brought by him have held that he is and has for years been operating in violation of lawful state commission regulations and therefore in violation of state law.

■ Complainant's second point is, we think, no better taken. This point is, that the statute does not make the great cleavage between "grandfather" applications and those under 307 (a) made by the commission's action in the case in refusing the one before it decides the other; and, that the right to continue operations, until the "grandfather" application is determined, ought to be saved to him until his 307 (a) application is determined, especially since both have been fully heard and he has moved to have them consolidated and determined together. This argument has, under facts not materially different, already been vigorously presented and flatly rejected in United States v. Maher, 307 U.S. 148, ·59

S.Ct. 768, 83 L.Ed. 1162; Hoey v. United States, 308 U.S. 510, 60 S.Ct. 132, 84 L.Ed. 436; Philadelphia-Detroit Lines, Inc., v. United States et al., 308 U.S. 528, 60 S.Ct. 384, 84 L.Ed. 446; Philadelphia-Detroit Lines, Inc., v. United States et al., D.C., 31 F.Supp. 188. This case is different from the Philadelphia Lines case only in that before its "grandfather" application had been finally decided here, the 307 (a) application had been made and heard and the applicant here had requested that both applications be consolidated and decided at the same time. But, this is of no significance. What is of significance is that under the "grandfather" application a continuance of operations is granted until the application is decided, and a continuance of operations, therefore, is an incident of that application. Whereas 307 (a) confers no such right. Under it operation cannot begin until the certificate is granted and a continuance of operations is not an incident of an application under it.

■ If complainant had applied under 306 (b) within 120 days for a certificate of convenience and necessity, he could, by the express provisions of that section, have continued to operate until his application thus filed had been acted·on. Complainant, however, did not file his application for a certificate of convenience and necessity within the 120 days under that section; indeed, he did not file it under that section at all. He filed his application under Section 307 (a) and long after the statutory period of 120 days Section (b) fixed. He is therefore in no position to claim a continuance of operations after his "grandfather" application is denied. Looked at in this view, his insistence that this proceeding be stayed until the commission can pass upon his 307 (a) application is seen to be without force or merit, for, while the commission can certainly take this course if it is so minded, as some of the commissioners individually seem to be, nothing in the law permits this court to interfere with or direct the procedure of the commission, and if we undertook to do so, we would be going directly counter to the Maher and Philadelphia cases as well as the settled current of authority that courts are not authorized to interfere with or direct the procedure to be followed by commissions. Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656.

There is no merit in the suit. It is dismissed.