**W. J. DILLNER TRANSFER CO.,**
**Plaintiff,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants.**

**Civ. A. No. 66–159.**

United States District Court
W. D. Pennsylvania.
Dec. 14, 1967.

Ernie Adamson, Robert E. Kline, of Kline & Smith, Pittsburgh, Pa., for plaintiff.

Gustave Diamond, U. S. Atty., Pittsburgh, Pa., Leonard S. Goodman, Asst. Gen. Counsel Interstate Commerce Commission, Washington, D. C., for defendants.

## OPINION

Before STALEY, Chief Circuit Judge, and SORG and WEBER, District Judges.

WEBER, District Judge.

This is an action under Sections 1336, 1398, 2284, and 2321–2325 of Title 28, United States Code, to set aside the report and order of the Interstate Commerce Commission in W. J. Dillner Transfer Co. Common Carrier "Grandfather" Application—Petition for Modification, 99 M.C.C. 485, decided September 3, 1965.

Dillner claims that the Interstate Commerce Commission has, by subsequent interpretation, modified or restricted the operation of its motor common carrier "grandfather" certificate previously granted it in 1942 under Section 206 of the Interstate Commerce Act, 49 U.S.C. § 306.

W. J. Dillner Transfer Co. is a Pennsylvania corporation, successor to a partnership, which has continuously conducted a transportation business since 1910. Upon the adoption of the Motor Carrier Act of 1935 [now designated as Part II of the Interstate Commerce Act, 49 U. S.C. § 306], Dillner made application for a certificate as a common carrier by motor vehicle under the "grandfather clause" of that Act. Section 206(a) (1) of the Interstate Commerce Act, 49 U.S. C. § 306(a) (1) provides in part:

"Except as otherwise provided * * * no common carrier by motor vehicle * * * shall engage in any interstate or foreign operation * * * unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: PROVIDED, HOWEVER, That, * * * if any such carrier or a predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, *. * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate is made * * * and if such carrier was registered on June 1, 1935, under any code of fair competition requiring registration, the fact of registration shall be evidence of bona fide operations to be considered in connection with the issuance of such certificate * * * * "

Sec. 208(a), 49 U.S.C. § 308(a) reads in part:

"Any certificate issued under section 306 or 307 of this title shall specify

the service to be rendered and the routes over which * * * the motor carrier is authorized to operate * * * "

Dillner made timely application for a "grandfather" certificate in 1936, and after extensive proceedings it was finally issued its certificate on September 14, 1942, the relevant portion of which reads as follows:

"Heavy machinery, and such commodities which because of their weight and size, require special equipment * * * "

In 1950, on application of Plaintiff, a more extensive certificate was granted Dillner on evidence of public convenience and necessity, couched in somewhat different language:

"Such commodities as, because of their weight or size require special equipment, * * * "

On April 10, 1959, in W. J. Dillner Transfer Co. — Investigation of Operations, 79 M.C.C. 335, the Commission undertook an extensive investigation of what was involved in Dillner's rights as a heavy hauler. The Commission's conclusion was that the test of whether a special equipment carrier was authorized to transport a particular commodity depended upon whether the commodity in question required the use of a special service or special equipment by the carrier in either loading, transporting or unloading. The resolution of the entire problem depended upon whether the commodity involved required the use of such special equipment because of its "inherent nature." Under such a test commodities such as bundled steel rods or palletized firebrick were not within the heavy hauling rights of Dillner because their inherent nature did not require bundling or mounting on pallets for shipment. Upon Plaintiff's complaint to this court for review, the findings of the Commission were sustained. W. J. Dillner Transfer Co. v. Interstate Commerce Commission, 193 F.Supp. 823 (W.D.Pa.

1961), aff'd. 368 U.S. 6, 82 S.Ct. 16, 7 L.Ed.2d 16.

The District Court, however, was construing Dillner's heavy hauler rights. It specifically did not construe his "grandfather" operations, as explained in the opinion:

"Dillner also complains that the Commission did not consider its so-called grandfather clause. From the brief filed by the Commission, it would appear that this was not referred to by the Commission. However, it appears that Dillner did not prior to June 1, 1935, and continuously thereafter transport packaged articles of iron and steel and palletized firebrick. The Commission was construing Dillner's rights and had there been evidence that Dillner was transporting this material prior to June 1, 1935, and had the Commission failed to consider it, it would present a different problem. However, in view of the fact that Dillner offered no evidence as to its 'grandfather operations' we do not see why it was incumbent upon the Commission to consider this." 193 F.Supp. 823, at p. 828.

Plaintiff then filed a Petition with the Commission asking that its "grandfather rights" be clarified and that it be relieved of any unlawful restrictions previously placed thereon. The Petitioner presented seven witnesses. While the hearing examiner found that Dillner had been operating a transportation business for over 50 years, and prior to June 1, 1935 they transported any commodity offered, but from the evidence he found that it was not possible to definitely ascertain the movement of any specific commodity from any origin to any destination on any particular date which traffic was not included in Dillner's authority as presently interpreted by the Commission. The Commission adopted the findings of the examiner and denied the petition on the grounds that the petitioner had failed to meet its burden of proof. 99 M.C.C. 485. Petitioner filed a peti-

tion for reconsideration which was denied by the Commission, Division 1, acting as an Appellate Division, on November 4, 1965, and a petition for review by the full Commission was denied on December 6, 1965, "for the reason that, in the judgment of the Commission, no issue of general transportation importance is involved." Plaintiff complains that he has been denied a right of review before the Commission, but we feel that the statute does not compel this:

" * * * Rehearing, reargument, or reconsideration may be granted if sufficient reason therefor be made to appear; but the Commission may, from time to time, make or amend general rules or orders establishing limitations upon the right to apply for rehearing, reargument, or reconsideration of a decision, order, or requirement of the Commission or of a division so as to confine such right to proceedings, or classes of proceedings, involving issues of general transportation importance." 49 U.S.C. § 17(6).

The Plaintiff at the hearing before this Court and in its Reply Brief takes the position that it had no such burden of proof. "Briefs of opposing Counsel are all based on the erroneous assumption that Plaintiff undertook the burden of proving that it has engaged in transporting heavy packages or pallets of various commodities prior to June 1, 1935, and thereafter. This assumption is quite erroneous as the record indicates. Plaintiff has contended, consistently, that it transported various commodities without regard to any limitation or restriction as to " 'inherent characteristics' and the hearing examiner has so found, in the concluding paragraphs of his report. Thus the arguments advanced by opposing counsel are not relevant, appropriate or applicable here." Plaintiff's Reply Brief, p. 3.

As we understand Plaintiff's arguments, they claim that Plaintiff was operating on June 1, 1935 in the transportation of any commodities offered which required the use of special handling equipment without restriction. This places Plaintiff in the classification of a heavy hauler. He claims that his heavy hauler's rights cannot be atomized or fragmentized by the imposition of a restriction against hauling bundled or palletized commodities.

Plaintiff's Petition to the Commission which opened these present proceedings, filed November 15, 1963, requested a hearing *"for the purpose of determining whether and to what extent this petitioner was actually engaged in the transportation of packaged, bundled or palletized commodities prior to* June 1, 1935 * *"* The government contends that therefore the Plaintiff assumed the burden of showing that on the critical date (i. e. June 1, 1935) it had actually carried these other specified commodities, which were outside the certificate authority it then held.

Both sides rely heavily upon United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942).

Plaintiff relies upon the holding of the Court summarized in Syllabus 5(d) (p. 476, 62 S.Ct. 722):

"If the applicant establishes that he was a 'common carrier' of a group of commodities or of an entire class or classes of property and was in 'bona fide operation' during the critical period in a specified territory, restrictions as to commodities within such classes which may be moved in any one direction or between designated points are not justified."

The Court determined in that case that the Commission had applied too rigorous a test. It specifically held, p. 488, 62 S.Ct. p. 729:

"Appellee's 'bona fide operation' may possibly be limited only to those articles actually carried. But where it was actively soliciting whatever it could get at any of the points, it does violence to its common carrier status to make the origin or destination of

future shipments conform to the precise pattern of the old. Such a pulverization of the prior course of conduct changes its basic characteristics. There is no statutory sanction for such a procedure."

▮ The certificate of authority involved in this present case authorized Plaintiff to transport "heavy machinery, and such commodities which, because of their weight and size, require special equipment." This constitutes Plaintiff a "heavy hauler" in the classification of the Commission. It has been finally determined that the transportation of bundled iron and steel or of palletized firebrick does not fall into the field of a heavy hauler. W. J. Dillner Transfer Co. v. Interstate Commerce Commission, D.C., 193 F.Supp. 823, 827; aff'd 368 U.S. 6, 82 S.Ct. 16, 7 L.Ed.2d 16. Plaintiff is therefore thrown upon the obligation of proving bona fide operation as a common carrier of the group of commodities or of the class or classes of property he claims the right to transport. United States v. Carolina Freight Carriers Corp., 315 U.S. 475 at p. 484, 62 S.Ct. 722, 86 L.Ed. 971. "(T)he burden of establishing the existence of the facts necessary to support its claim in the proceeding before the Commission was constantly upon the applicant therein * * *" Watson Bros. Transp. Co. v. United States, 59 F.Supp. 762, 769 (D. Neb., 1945). This burden of proof is repeated in a number of cases. Evans v. United States, 65 F.Supp. 183 (W.D. Va., 1946); Elliott Bros. Trucking Co. v. United States, 59 F.Supp. 328, 331 (D. Md.1945); Motor Freight Express v. United States, 119 F.Supp. 298 (M.D.Pa. 1954).

"(I)n the event the grandfather permit does not correctly reflect the scope of the grandfather operation, the carrier's recourse is to petition the Commission to reopen the grandfather proceedings for consideration of the evidence not previously brought to the Commission's attention * * * since the permit cannot be collaterally attacked." Nelson, Inc. v. United States, 355 U.S. 554, 561–562, 78 S.Ct. 496, 500, 2 L.Ed.2d 484 (1958).

The Courts have consistently held in reviewing Commission proceedings that the petitioner before the Commission has the burden of proving that the involved motor carrier was engaged in bona fide operation at the material time specified in the Act. Moore v. United States, 41 F.Supp. 786, 792, aff'd. 316 U.S. 642, 62 S.Ct. 1036, 86 L.Ed. 1128. This burden of proof is not different for carriers applying within the stated period who later seek to reopen their grandfather proceedings, as in the present case. Keystone Motor Express, Inc. v. United States, D.C., 228 F.Supp. 793.

▮ Plaintiff seemingly admits that it has not carried this burden of proof by arguing that it is not required to do so, that its only burden has been satisfied by a showing that it operated as a bona fide common carrier without restriction to the commodities which it carried. But this contention has been refused by Carolina Freight Carriers Corp., supra, where the Supreme Court stated, 315 U.S. p. 480, 62 S.Ct. p. 726:

"The Act provides the test of 'bona fide operation'. That standard carries the connotation of substantiality. It also makes clear that a holding out to serve a specified area alone is not sufficient. It is 'actual rather than potential or simulated service' which is required. McDonald v. Thompson, 305 U.S. 263, 266 [59 S.Ct. 176, 83 L.Ed. 164]. Substantial as distinguished from incidental, sporadic or infrequent, service is required."

As was stated in Worster Motor Lines, Inc. v. United States, 226 F.Supp. 603, 605 (W.D.Pa., 1963):

"It is not the function of this Court to examine the evidence before the Commission in an application of this kind and substitute its judgment for that of the Commission. The weight of the evidence is for the Commission. This Court must sustain the Commission if its findings are supported by substantial evidence. * * * that

the findings of the Commission must be sustained if supported by substantial evidence viewing the record as a whole * * * (citations omitted)."

It is the exclusive function of the administrative agencies to appraise the conflicting testimony or other evidence, to judge the credibility of the witnesses and evidence adduced by the parties and determine the weight of the evidence. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 484, 490, 62 S.Ct. 722, 86 L.Ed. 971. Plaintiff contends that since it presented witnesses and that no witnesses appeared in opposition, it had proved its case. However, the weight and credibility of the evidence is for the Commission. The Commission "may disbelieve or disregard any evidence as it deems unconvincing; it may give as much or as little weight to evidence as seems proper." Transamerican Freight Lines v. United States, 51 F. Supp. 405, 410 (D.Del., 1943). The Commission concluded, based upon the entire record of the grandfather proceedings, including the reopened portion, that it appears that Dillner did not prior to June 1, 1935, and continuously thereafter transport packaged articles of iron and steel and palletized firebrick.

 Plaintiff argues that the Commission's order is not based on substantial evidence, because all of the evidence produced at the hearing on the petition to review was produced by it. But the examiner's report and the Commission's finding was based on the whole record, both the present and the prior grandfather proceedings. Plaintiff desires this Court to weigh the entire evidence. Plaintiff, at the time of the hearing, did not produce the full evidentiary record before the Court, claiming then that it was only required to produce the relevant portions of the record. He now moves for leave to produce the entire evidentiary record, which the government opposes. This Court may not review the findings of fact of the administrative body to determine whether it is supported by substantial evidence unless the

whole evidentiary record is produced before it. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260 (1934).

However, it was the original contention of Plaintiff that it did not require the production of the entire evidentiary record, and that remained the position of plaintiff's counsel after the government moved to dismiss for failure to produce the entire record. Plaintiff's motion, as presented subsequent to the hearing, continues to state that the omitted portions of the record as cited by the government counsel are not material or relevant to the issues herein, but that it be allowed to produce them for the record "in the interests of justice."

 We see no reason for the opening of the record by the filing of these materials. Because of the conclusions we have arrived at herein we feel that there is a rational basis for the conclusions approved by the administrative body. At no point does plaintiff point to evidence that it did haul the specific commodities which it now seeks to have included in its rights as a heavy hauler. Plaintiff points to no evidence which the Commission has ignored with respect to these specific commodities. Plaintiff's position with respect to these commodities under its "heavy haulers" certificate has been finally judicially determined in this Court, 193 F.Supp. 823. The Commission's determination that he is not now precluded from hauling any group or class of commodities which he hauled on or after June 1, 1935 is supported by its findings in the record before this court. Plaintiff has not only not met its burden of proof that it hauled such commodities before the applicable grandfather date, it has not attempted to do so. Plaintiff points to one piece of evidence which he claims was ignored by the Commission: his registration under the N.R.A. Code of fair competition for the trucking industry on July 13, 1934. Section 206(a) (1) provides that the fact of such registration shall be evidence of bona fide operations to be con-

sidered in connection with the issuance of a grandfather certificate. The relevant portion of such registration reads as follows:

"Services—Call and Demand.

I. Commodities Generally (not applicable here).

II. Commodities Special.

Those exceeding ordinary equipment and loading facilities * *. such as boilers, heavy machinery, road building equipment, structural steel and commodities of excess length and width, with exceptions as follows. * * * Explosives, except small arms and ammunition."

We see nothing in this registration tending to prove the type of commodities which Plaintiff is seeking to have added to his grandfather rights in this case, bundled iron and steel and palletized firebrick.

Plaintiff seeks one other item of relief. Its original certificate contained a comma after the words "heavy machinery", thus reading "heavy machinery, and such commodities * * *". In later years, in reissuing consolidated certificates, the Commission omitted the comma. Plaintiff requested the restoration of the comma in his petition. There was no opposition to such request, and the Commission saw no justification for restoring it, since it held that the restoration of the comma would neither enlarge nor shrink the certificate in question. Plaintiff contends that the comma had meaning to the members of the Commission at the time they placed it there, and it contends that it has meaning for Dillner, to distinguish heavy machinery on the one hand and the special equipment phrase which follows it. We believe that the Commission's action in removing the comma was arbitrary, and that Plaintiff is entitled to have it restored, for whatever construction it may assist. It is obvious that the Commission intends to construe the rights as being the same, with or without the comma. We do not know what position Plaintiff may take in the future, but we believe that he is entitled to a statement of his rights in the same language and the same punctuation as originally given him.

For the reasons above stated the action of Plaintiff will be dismissed, except in the particular herein noted.