Honorable Mack Wallace Chairman Railroad Commission of Texas E. O. Thompson Building Austin, Texas 78711
Re: Railroad Commission's authority to require licensing of an ICC certified transporter of liquefied petroleum gas.
Dear Mr. Wallace:
You have requested our opinion concerning whether section 5 of article 6066d, V.T.C.S., requires state licensing of an Interstate Commerce Commission (ICC) certified transporter that is not the ultimate consumer of the gas. You further ask whether such a requirement is constitutional.
Section 5 of article 6066d provides in part:
 [N]or shall . . . persons, firms, corporations or associations engage in the sale, transportation, dispensing or storage of liquefied petroleum gases within this state, except where stored by the ultimate consumer for consumption only, without having first obtained from the Railroad Commission of Texas under the provisions of this Act, a license, to do so. . . .
(Emphasis added). A transporter of liquefied petroleum gas is clearly required to obtain a license from the Commission. Attorney General Opinion O-2307 (1940). The statute contains no exemptions for interstate carriers certified by the ICC. Accordingly, in our opinion such transporters are required by section 5 to obtain a license from the Commission.
Your second question is whether such a requirement violates the Commerce Clause of the Federal Constitution. Title49 U.S.C. § 306 and 307 provide for the issuance of ICC certificates when `the proposed service . . . is or will be required by the present or further public convenience and necessity.' Title 49 U.S.C. § 310a provides that Emergency Temporary Authorities (ETA) will be issued on the basis of `immediate and urgent need.' In Fry Roofing Co. v. Wood, 344 U.S. 157 (1952), the Court upheld a requirement for a state permit to be obtained by a carrier operating exclusively in interstate commerce. The Court noted that the state agreed that it could not issue permits on the basis of `convenience and necessity' and thus distinguished the case from Buck v. Kuykendall, 267 U.S. 307 (1925). After explaining that the carrier in Fry had not obtained in ICC certificate the court stated that:
 In this situation . . . a state can regulate so long as no undue burden is imposed on interstate commerce, and that a mere requirement for a permit is not such a burden.
344 U.S. at 162. However, this language is not dispositive of your question for the carrier did not possess ICC certification.
In South Carolina State Highway Dep't v. Barnwell Brothers, Inc.,303 U.S. 177 (1938), the Court upheld width and weight regulations applied by South Carolina to trucks operating in interstate commerce over claims that such regulations had been superseded by 49 U.S.C. § 301 et seq., stating:
 The state has a primary and immediate concern in [the] safe and economical administration [of its local highways].
303 U.S. at 187. In reliance upon Barnewell, the court in Thompson v. McDonald, 95 F.2d 937 (5th Cir. 1938), aff'd on other grounds, 305 U.S. 263 (1938), held that the state could require a permit of ICC certified carriers in order to protect the public safety and the local highways. The court noted that only conflicting state laws were superseded by 49 U.S.C. § 301 et seq., see Southwestern Greyhound Lines, Inc. v. Railroad Commission, 99 S.W.2d 263 (Tex. 1936), and that these local concerns had not been regulated by Congress. Since uniformity was not seen as necessary in these fields, the court upheld the state permit requirements. See Winton v. Thompson, 123 S.W.2d 951
(Tex.Civ.App.-Austin 1938, writ ref'd). However, the United States Supreme Court affirmed the case on different grounds and specifically reserved the question of whether 49 U.S.C. § 301 et seq. has superseded such state laws. 305 U.S. at 267.
In Railroad Commission v. Querner, 242 S.W.2d 166 (Tex. 1951), the court stated that the Railroad Commission could require a motor carrier's permit of a carrier certified by the ICC, but held that such a permit could be revoked only for reasons involving public safety or highway administration. See Southern Pacific Transport Co. v. Railroad Commission, 493 S.W.2d 502
(Tex. 1973).
Thus to our knowledge the Supreme Court of the United States has not addressed your precise question, but the weight of authority and the Court's opinion in Barnwell would indicate that some license requirement for LPG transporters certified by the ICC would be constitutional. The purpose of article 6066d is to protect the health, welfare, and safety of the general public. See V.T.C.S. art. 6066d, §§ 3A, 3C; Attorney General OpinionH-1030 (1977). A license is issued to an applicant who is able to prove `he can and will meet the safety requirements provided in this Act.' V.T.C.S. art. 6066d, § 9B(2). Since licenses are not issued pursuant to determinations of convenience and necessity, but rather are required only under the state's police power to protect the public health and safety, the Supreme Court's opinions in Fry Roofing, supra, and Barnwell, supra, would indicate that the application of article 6066d in this context is constitutional.
However, it should be noted that the situation has somewhat changed since these decisions were rendered. The question in Thompson and Querner was whether the State could require a motor carrier's permit under article 911b, V.T.C.S. Pursuant to ICC regulation, such permits are no longer required; a uniform system of registration is now utilized. 49 U.S.C. § 302(b)(2); 49 C.F.R. § 1023.1 (1976) et seq. Section 1023.11 et seq. provide for registration of an ICC certificate with respective states; section 1023.21 et seq. provide for the designation of an agent for service of process; section 1023.31 et seq. provide for the registration and identification of vehicles; and section 1023.51 et seq. provide for presenting evidence of insurance. Carriers operating under an Emergency Temporary Authority (ETA) of a duration not more than 90 days may follow a simplified notice procedure in lieu of the section 1023 procedure. 49 C.F.R. § 1131.7 (1976). An application for an ETA must show proper insurance in each state where the carrier operates. 49 C.F.R. § 1131.2(e) (1976).
Thus a carrier that registers a permanent ICC certificate pursuant to these regulations would have satisfied the requirements of article 6066d pertaining to registration of vehicles and presentation of evidence of insurance. V.T.C.S. art. 6066d, §§ 11, 24. However, the registration of certificates would not duplicate the provisions of article 6066d which pertain to standards for vehicles, containers, and employees. In light of the high standard of care imposed upon handlers of liquefied petroleum see Attorney General Opinion H-1030 (1977), the consequently strong state interest in protecting the public safety, and the lack of ICC regulations pertaining to this state interest, see Maurer v. Hamilton, 309 U.S. 598 (1940), in our opinion the granting of an ICC certificate of convenience and necessity would not in itself preclude the State from requiring an LPG license of interstate carriers.
The simplified notice procedure for ETA holders was upheld in National Association of Regulatory Comm'rs v. United States,397 F. Supp. 591 (D.D.C. 1975), aff'd, 423 U.S. 1041 (1976). It is clear from that opinion that the granting of an ETA is intended to bypass delays from state procedures. Since an ETA is granted on the basis of `immediate and urgent need,' in our opinion the courts would hold that delays incident to state licensing would burden interstate commerce which is authorized under an ETA. Accordingly, while we believe that the issuance of an ETA does not in itself preclude the State from requiring the recipient thereof to apply for and obtain an LPG license to protect the public safety, in our opinion the State may not prevent the holder of an ETA from operating during the processing of a license application under article 6066d.
While your questions are directed to ICC certifications and authorities, we note that the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., governs the interstate transportation of liquefied petroleum gas. 49 C.F.R. § 172.101
(1976). Title 49 U.S.C. § 1811(a) provides that inconsistent State requirements are preempted. Both the statute and the regulations provide for a determination by the Secretary of Transportation concerning preemption of state laws. 49 U.S.C. § 1811;49 C.F.R. § 107.201 (1976) et seq. While the State or an affected party may seek such a determination, your office has informed us that no such determination has been sought regarding article 6066d. Consequently, while in our view the licensing requirements of article 6066d are not generally preempted by ICC jurisdiction, we caution that the application of article 6066d to interstate transportation is open to question pending the determination of the Secretary of Transportation and any appeals therefrom.
 SUMMARY
The Railroad Commission is not precluded from requiring an LPG license from a transporter merely by the issuance of an ICC certificate of convenience and necessity or an ICC Emergency Temporary Authority; however, the State may not prevent the recipient of the latter from operating during the pendency of his state application.
Very truly yours,
John L. Hill Attorney General of Texas
Approved:
David M. Kendall First Assistant
C. Robert Heath Chairman Opinion Committee