**BUSH TRANSFER, Inc., v. UNITED STATES et al.**

Civil Action No. 55.

District Court, W. D. North Carolina.

Jan. 18, 1944.

L. H. Wall and H. B. Adams, both of Lenoir, N. C., for plaintiff.

Edward Dumbauld, Sp. Asst. to Atty. Gen., Wendell Berge, Asst. Atty. Gen., Theron Lamar Caudle, U. S. Atty., of Charlotte, N. C., and Daniel W. Knowlton, Chief Counsel Interstate Commerce Commission, and J. Stanley Payne, Asst. Chief Counsel Interstate Commerce Commission, both of Washington, D. C., for defendants.

Before PARKER, Circuit Judge, and WEBB and HAYES, District Judges.

PARKER, Circuit Judge.

This is a suit under 28 U.S.C.A. § 41 (28) to enjoin and set aside an order of the Interstate Commerce Commission made upon an application for a certificate under the "grandfather" clause of section 206(a) of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a). Interlocutory injunction has been applied for and a special statutory court of three judges has been convened pursuant to section 47 of Title 28 of the United States Code Annotated. At the hearing upon the application for interlocutory injunction, the evidence heard before the Commission has been introduced and the case has been submitted for final decree.

Plaintiff is the successor in interest of J. W. Turnmire and W. J. Spainhour, doing business as S. & T. Truck Company, of Lenoir, N. C., who on January 31, 1936, filed application for a certificate of convenience and necessity under the "grandfather" clause of the Motor Carrier Act, and who at the time of the passage of the act and prior thereto had been operating a single truck in the territory applied for. The application sought a certificate authorizing transportation, in interstate or foreign commerce, over "irregular routes," of general commodities (except livestock, commodities in bulk, commodities requiring special equipment, and articles of unusual value) between all points in a wide area embracing seven states, viz., North Carolina, Virginia, Maryland, Delaware, New Jersey, Pennsylvania and New York, and the District of Columbia.

The order of the Commission provided for the issuance of a certificate authorizing transportation of

(1) New furniture, from Lenoir, N. C., and all points within 5 miles thereof, to all points in Virginia (except Roanoke, Norfolk, Newport News, Richmond and Staunton), all points in Maryland (except Baltimore), all points in New Jersey (except Camden and except points in New Jersey within 15 miles of Columbus Circle, New York, N. Y.), and all points in Delaware, returning with damaged or rejected shipments of new furniture; over irregular routes in each instance;

(2) General commodities, except articles of unusual value, dangerous explosives, commodities in bulk, commodities requiring special equipment, and household goods, from New York, N. Y., Philadelphia, Pa., Baltimore, Md., and Richmond, Roanoke and Norfolk, Va., to Lenoir and points in North Carolina within 45 miles thereof, returning with empty containers used in the transportation of such commodities; over irregular routes in each instance.

With respect to the exceptions of the places included in the parenthesis in (1) above, it appears that the Commission had already issued a certificate to plaintiff in another proceeding which authorized him to serve these places, and that they were excepted from the certificate here only for the purpose of avoiding duplicating operating rights to the same carrier. Another certificate under which plaintiff is operating covers other points in the same territory. Under the three certificates plaintiff has operating rights to transport merchandise as a carrier over irregular routes as follows:

New furniture from Lenoir, N. C., and points within five miles thereof, to all points in Virginia, Maryland, Pennsylvania, New Jersey and Delaware, and the District of Columbia, returning with damaged or rejected shipments of new furniture.

New furniture from Lenoir, N. C., and points within five miles thereof, to Spartanburg, Greenville, Anderson and Columbia, S. C., Charles Town, Clarksburg and Morgantown, W. Va., Knoxville and Chattanooga, Tenn., and all points in New York within 15 miles of Columbus Circle, New York City.

Nursery stock from Lenoir, N. C., and points within 45 miles thereof, to all points in Maryland, Pennsylvania, Delaware and New Jersey, all points on Long Island, N. Y., Washington, D. C., and New York, N. Y.

General commodities (with certain exceptions) from New York, N. Y., Philadelphia, Pa., Baltimore, Md., and Richmond, Roanoke and Norfolk, Va., to Lenoir, N. C., and points in North Carolina

within 45 miles thereof, returning with empty containers used in the transportation of such commodities.

Glass from Ford City, Pa., to Lenoir, N. C., and points within five miles of Lenoir.

Paper from Hopewell, Va., to Lenoir, N. C., and points within five miles of Lenoir.

Roofing from York, Pa., to all points in North Carolina on and west of U. S. Highway 1.

Petroleum products in containers from Coraopolis, Pa., to Lincolnton, N. C., returning with empty containers used in the transportation of petroleum products.

It is necessary to consider the certificates in the other two cases; although the action of the Commission therein is not challenged; for plaintiff has no ground to complain of denial of operating authority under the application of Turnmire and Spainhour where it holds such authority by virtue of grants in these applications.

The plaintiff accordingly has been given operating authority in the territory covered by the application here under consideration on north-bound traffic from Lenoir, and points within five miles thereof, to a broad area embracing without exception all points in the states of Virginia, Maryland, Pennsylvania, New Jersey and Delaware, and the District of Columbia, and points in the state of New York within 15 miles of Columbus Circle, New York City. On south-bound traffic it is given operating authority from New York, N. Y., Philadelphia, Pa., Baltimore, Md., and Richmond, Roanoke and Norfolk, Va., to Lenoir, N. C., and all points within 45 miles of Lenoir. On north-bound shipments the transportation authorized was restricted to new furniture. On south-bound shipments transportation of general commodities was authorized, with only such limitations as were contained in the application. Plaintiff complains of the limitation of territory and commodities in the authorization of north-bound transportation and of the limitation of territory to designated points of origin and destination in the authorization of south-bound transportation.

The Commission made the following findings with respect to north-bound transportation:

"The evidence fairly establishes that on and continuously since June 1, 1935, applicant was and has been engaged in the transportation of new furniture from Lenoir to New York, N. Y., and scattered points in a territory embracing Virginia, Maryland, Pennsylvania, New Jersey, Delaware, and the District of Columbia. There is no evidence of transportation of new furniture from any point in North Carolina, except Lenoir, or to any point in New York except New York City, on or prior to the statutory date.

"The only other northbound service shown to have been performed, on or prior to June 1, 1935, is the transportation of a single shipment of sassafras bark, from Lenoir to Philadelphia, Pa., in April 1935, and a single shipment of cotton yarn from Lenoir to Philadelphia in January 1935. These shipments appear to represent only isolated instances of transportation and neither of these commodities has been transported since June 1, 1935. Applicant has failed to establish sufficient substantiality and continuity of operation with respect to such service to warrant a grant of authority under the 'grandfather' clause."

With respect to south-bound transportation the pertinent findings of the Commission were as follows:

"Prior to the statutory date, applicant's southbound operations consisted primarily of the return transportation of damaged or rejected shipments of new furniture and of various materials and supplies used in the manufacture of new furniture. It is contended, however, that he has always held himself out to transport any commodity available on the return trips; that he and his drivers have solicited general freight; and that many other commodities have actually been transported. From a review of the evidence, we are convinced that such professed holding-out must be disregarded to some extent, both in respect of the territory served and the class of property transported.

"On and prior to June 1, 1935, applicant is shown to have originated return traffic only at Linden, N. J., Philadelphia and Ford City, Pa., Baltimore, Md., and Richmond and Roanoke, Va., and the evidence is convincing that return traffic was also originated at New York City and Norfolk, Va., prior to the statutory date, although no specific shipments are listed. The evidence fails to establish continuity of operations out of Linden. Practically all southbound shipments transported prior to the statutory date were delivered at Lenoir.

Elkin, N. C., which is approximately 45 miles from Lenoir, is the only other point within the claimed 75 mile radius, shown to have been served prior to the statutory date. Although this particular point has not been served since that time, various othed points in North Carolina within 45 miles of Lenoir have been served with more or less regularity."

We cannot say that the Commission's findings are not supported by the evidence, that they involve any error of law or that they are so arbitrary or unreasonable as to amount to an abuse of discretion. This being true, the relief prayed for must be denied.

That the Commission acted properly in applying substantiality of service as the criterion in limiting territory under the grandfather application, and that we are bound by its determination limiting the certificate to points between which substantial service has been shown, is settled, we think, by the decision of the Supreme Court in United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 480-482, 62 S.Ct. 722, 726, 86 L.Ed. 971, where the court, in approving a limitation of a "grandfather" certificate to points actually served and not allowing territory embraced in a general holding out, said:

"Authority to operate within a specified 'territory' may include permission to service all points in that area. *On the other hand it may be restricted to designated points therein.* Or as in the instant case, it may extend to all points in a part of that area and to selected localities in another part. *The precise delineation of the area or the specification of localities which may be serviced has been entrusted by the Congress to the Commission.* Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586. The Act provides the test of 'bona fide operation'. That standard carries the connotation of substantiality. It also makes clear that a holding out to serve a specified area is not alone sufficient. It is 'actual rather than potential or simulated service' which is required. McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 178, 83 L.Ed. 164. Substantial, as distinguished from incidental, sporadic, or infrequent, service is required. Substantial service actually rendered may have been confined to narrow limits. * * *

"As we indicated in Alton R. Co. v. United States, supra, the purpose of the 'grandfather clause' was to assure those to whom Congress had extended its benefits a 'substantial parity between future operations and prior bona fide operations' * * ·*. We cannot say that that was denied in this case, if the limitations on the territorial scope of the operations are alone considered. *While service to and from all points in the States included in the application was not allowed, the reduction was determined by the standard of substantiality of service.* And consideration was given to the characteristics of irregular route carriers and their role in the national transportation system. That involved a weighing of specific evidence in light of the complexities of this transportation service. The judgment required is highly expert. Only where the error is patent may we say that the Commission transgressed. That is not this case." (Italics supplied.)

And later with reference to the scope of the certificate to be granted the court said at pages 489 and 490 of its opinion in 315 U.S., 62 S.Ct. 722, 730, 86 L.Ed. 971: "We express no opinion on the scope of the certificate which should be granted in this case. That entails not only a weighing of evidence but the exercise of an expert judgment on the intricacies of the transportation problems which are involved. That function is reserved exclusively for the Commission. United States v. Maher, supra (307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162); Alton R. Co. v. United States, supra. Our task ends if the statutory standards have been properly applied."

With respect to the limitation of commodities authorized to be carried in north-bound transportation, we think that this, as well as points to be served, was a matter to be determined by the Commission in application of the standard of substantiality of service within the critical period. The record discloses that, notwithstanding a somewhat broader holding out, the northbound service of plaintiff during the critical period had been confined to the transportation of new furniture, and we think that the Commission was acting in the proper exercise of its power in limiting authority under the certificate accordingly. As said by the Supreme Court in United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 483, 62 S.Ct. 722, 727, 86 L.Ed. 971: "It is plain that a carrier's holding out and actual performance may be limited to a few articles only. That is to say he may be a common carrier only of a restricted number of commodities. See

Galveston Truck Line Corp., 22 M. C. C. 451, 467. Or the service actually rendered may have been confined to such a few commodities that his holding out or willingness to carry a much larger class may be disregarded. Loving v. United States, supra [D.C., 32 F.Supp. 464], was such a case."

Plaintiff complains that he is not allowed to carry articles other than new furniture from Lenoir and vicinity; but the answer is that during the critical period operations in northbound traffic were practically confined to this commodity, and substantial service otherwise was not shown. Plaintiff was operating in a furniture manufacturing center and his hauling therefrom was practically confined to its product. Under such circumstances the Commission was justified in finding that substantial service was limited to that specialty, notwithstanding he may have held himself out as willing to haul other commodities which he did not in fact haul. He complains, also, that, as to southbound traffic he is limited to certain cities of origin and is not allowed to accept south-bound shipments from any other points in the wide territory to which he is permitted to haul furniture in a northbound movement. The answer, likewise, is that the Commission has given him all that was covered by substantiality of service in the critical period. The certificate granted undoubtedly allows him parity of operations as compared with what he did in the critical period; and this is all that he is entitled to under the act. If there is hardship in not being permitted to haul articles other than new furniture northward or general commodities other than from the designated points southward, he has no ground of complaint because substantial operations in the critical period covered nothing more.

We have given careful consideration to the able argument of counsel for plaintiff presented orally and by brief; but we do not think that the Commission has failed to apply the standards laid down by the Supreme Court in the Carolina Carriers case, supra. It is not our function to weigh the evidence or to substitute our judgment for that of the Commission in the exercise of the administrative duty imposed upon it by Congress. United States v. Louisville & N. R. Co., 235 U.S. 314, 35 S.Ct. 113, 59 L.Ed. 245. That duty "entails not only a weighing of evidence but the exercise of an expert judgment on the intrica-

cies of the transportation problems which are involved."

For the reasons stated, the injunction applied for will be denied.

Injunction denied.