**MID–STATES PACKERS, INC., et al.,
Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission,
Defendants.**

**No. 72–C–3028–W.**

United States District Court,
N. D. Iowa, W. D.
July 27, 1973.

Frederick G. Yeager, Sioux City, Iowa and Eugene D. Anderson, Washington, D. C., for plaintiffs.

Sara Najjar, Dept. of Justice, Washington, D. C., and Evan L. Hultman, U. S. Atty., Sioux City, Iowa, for the United States.

Charles H. White, Jr., I. C. C., Washington, D. C., for I. C. C.

Charles H. Dick, Jr., and Frank W. Davis, Jr., Des Moines, Iowa, Stuart F. Gassner, Richard J. Schreiber, Howard D. Koontz, and Joseph J. Nagle, Chicago, Ill., for intervenors.

## ORDER

McMANUS, Chief Judge.

This action for review of an order of the Interstate Commerce Commission

(ICC) was submitted for decision upon the record before the ICC and briefs and arguments of counsel.

A brief history of this action discloses that plaintiffs are all packers which have facilities located upon trackage of the Sioux City Terminal Railway (SCTR) at Sioux City. At all times relevant the SCTR made certain per car switching charges for services rendered at Sioux City. In 1940 the ICC decided Sioux City Terminal Railway Switching, 241 ICC 53 (1940), which involved the question of the extent of absorptions of the switching charges required by the line haul carriers. With a few exceptions, from that time until August 1967 the line haul carriers absorbed all of the switching charges at Sioux City. Subsequent thereto the switching charges were increased by SCTR on several occasions. At this time the line haul carriers ceased absorbing the full amount of the switching charges. Initially they paid SCTR and looked to the shippers for reimbursement; however, in early 1969 they ceased this practice and remitted to SCTR only as paid by the shippers, who for some time have refused to pay the unabsorbed portions of the switching charges.

On August 18, 1967 the packers filed a complaint (Docket 35151) with the ICC alleging that certain connection terminal switching charges applicable at Sioux City as provided in the tariff of SCTR were unjust and unreasonable in violation of § 1(5) of the Act and resulted in unjust and unreasonable classifications and practices, in violation of §§ 1(6), 1(11), 1(13) and 1(14); in addition they alleged that the failure of the line haul carriers to absorb the full amount of such switching was unjust, unreasonable, discriminatory, unduly prejudicial and otherwise unlawful, in violation of §§ 1(5), 1(6), 1(9), 1(11), 1(13), 1(14), 2, 3(1), 3(4), 4(1) and 6(7) of the Act. The line haul carriers also filed a complaint attacking SCTR rates (Docket No. 35180). This complaint was subsequently abandoned, apparently because of an abandonment petition filed by SCTR. Likewise the shippers abandoned their allegations against SCTR as moot in light of the abandonment proceedings. Consequently no evidence was presented in that regard, and the issue in Docket No. 35151 was limited to the matters of absorption. On this issue the Commission found the failure to absorb the full amounts to be unlawful but that complainants had failed to prove their right to damages.

At the final pre-trial conference the parties agreed that this case presents two issues for resolution at this time:

1. Did the ICC consider the issue of whether plaintiffs were entitled to damages?

2. If so, did it err on the record?

### 1. Did ICC Consider Damages

An examination of the record before the ICC and its orders leaves no doubt that the issue of whether plaintiffs were entitled to damages was before and considered by the ICC. At page 14 of the examiner's report, he finds:

"Complainants have failed to prove they are entitled to reparations. The assailed practice is not shown to have resulted in unreasonable charges in the past or otherwise to have caused damage to the complainants. See *Public Belt* case at pages 182 and 183. Defendants should proceed with collection of unpaid charges."

This language taken in conjunction with the briefs and arguments leaves no doubt that the issue was considered and decided.

### 2. Did ICC Err on Record

As to the scope of review of this court, plaintiffs contend that where the matter of reparations is submitted to a single judge a broader review is permitted since no special expertise is required. No authority is cited to directly support plaintiffs' position. Further it seems logical that where plaintiffs elect to present the issue of damages to the ICC and a determination is made as to whether a right exists or not, that the

same considerations of finality and agency expertise attach. In addition, since the question is the right to damages, it appears that the agency's expertise is called into play to an equal degree as to where other issues are presented. Accordingly this court will apply the traditional standard and will not substitute its judgment for that of the Commission and the order will not be set aside if a rational basis exists or it is supported by substantial evidence. *See, e. g.,* Messinger v. ICC, 300 F.Supp. 1336 (N.D.Iowa 1969); Ace Lines, Inc. v. United States, 239 F.Supp. 804 (S.D. Iowa 1965); Moeller v. ICC, 201 F. Supp. 583 (S.D.Iowa 1962).

Ultimately plaintiffs assert two theories as to support their claim of error by the ICC. First, plaintiffs contend that they have factually demonstrated their right to damages before the ICC. It is the view of the court that this claim is not supported by the record. An examination of the record indicates that plaintiffs have failed to sustain their burden of showing actual damage as a result of the unlawful practice.

Plaintiffs' second contention is that even if they have failed to show actual damages they are still entitled to damages as a matter of law. Specifically plaintiffs contend that where a violation of § 1(5) is found or the rates are found unjust and unreasonable, damages are automatic. In addition plaintiffs seek to rely on a violation of the mandatory orders in Sioux City Terminal Railway Switching, supra, and Cudahy Packing Co. v. Akron C. & Y. R. Co., 318 ICC 229 (1962), aff. Atchison, Topeka and Santa Fe Railway Co. v. United States, 218 F.Supp. 359 (D.C.1963).

As a general rule evidence sufficient to establish a violation of the act is not necessarily sufficient to support an award of reparations. The assailed practice must be shown to have resulted in unreasonable charges in the past or otherwise to have caused damage to plaintiff. *See, e. g.,* Interstate Commerce Commission v. United States, 289 U.S. 385, 53 S.Ct. 607, 77 L.Ed. 1273 (1933); Public Belt R. Comm. v. Aberdeen & R. R. Co., 335 ICC 1026 (1969); U. S. Steel Corp. v. Baltimore & O. R. Co., 325 ICC 430 (1967).

Here while plaintiffs argue the contrary and the record is not without confusion, it is the view of the court that finding of unlawfulness was based not upon a finding that failure to absorb would raise the railroad rates above reasonable levels but upon a finding of undue prejudice. Accordingly the measure of damages is proper as applied. Likewise the decisions in *Cudahy* and the *Sioux City Terminal Railway Switching* cases do not appear in and of themselves to give plaintiffs an absolute right to damages.

It is therefore

Ordered

1. This order shall constitute findings of fact and conclusions of law.

2. The findings of the ICC are affirmed and this action dismissed upon its merits.